UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| **HERMAN HENDERSON,** | ) | |
| | ) | Case No. |
| Plaintiff, | ) | 5:17-cv-377-JMH |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **PIERATT'S, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

***

The Plaintiff, Herman Henderson ("Henderson") was an employee of Defendant, Pieratt's, Inc. ("Pieratt's"), from March 7, 2012 to June 26, 2017 at Pieratt's Warehouse and Delivery facility on Palumbo Drive in Lexington, Kentucky. Henderson claims that throughout the course of his employment, he did not receive any additional compensation for hours he worked in excess of forty (40) per week and further alleges that he was routinely subjected to unlawful withholdings from his wages. Henderson has since resigned his employment with Pieratt's.

On August 25, 2017, Henderson filed this action in Fayette Circuit Court, alleging claims that Pieratt's alleged actions violatee the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Kentucky Wage and Hour Act ("KWHA"), KRS Chapter 337. [DE 1-1]. On September 18, 2017, Pieratt's removed the action to the Eastern District of Kentucky. [DE 1].

1

The parties have each now moved for partial summary judgment. [DE 14, 16]. Pieratt's moved for partial summary judgment on the issue of liability on Henderson's first cause of action under the FLSA. [DE 14]. Henderson moved for partial summary judgment on the issue of Pieratt's alleged liability under both the FLSA and the KWHA. [DE 16]. The parties have responded in opposition to the applicable motions. [DE 23, 26]. Additionally, the parties have replied in support of their motions or the time to reply has expired. [DE 29]. As a result, this matter is ripe for review and consideration and all pending motions for summary judgment will be consolidated in this memorandum opinion and order.

For the reasons that follow, Pieratt's motion for partial summary judgment [DE 14] is **DENIED** and Henderson's partial motion for summary judgment [DE 16] is **DENIED.**

## I.    Factual and Procedural Background

Plaintiff, Herman Henderson, is a resident of Fayette County, Kentucky, who was employed with Defendant, Pieratt's Inc. from March 7, 2012 to June 26, 2017. [DE 1-1 at 2-3, PageID #5-6; DE 5 at 2, 4, PageID #32, 34; DE 16-25 at 2-3, PageID #259; DE 26 at 1-2, PageID #327]. Pieratt's is a Kentucky corporation with its principal place of business in Lexington, Kentucky. [DE 1-1 at 3, PageID #36, DE 16-25 at 1, PageID #258, DE 26 at 1, PageID #357]. Pieratt's maintains business operations at several locations including (1) the Mount Tabor Showroom and Service Center in

Lexington, Kentucky, (2) the Nicholasville Road Showroom, in Lexington, Kentucky, (3) the Richmond Center Showroom in Richmond, Kentucky, (4), the Clearance Center Outlet, located at 2375 Palumbo Drive, Lexington, KY, and (5) the Warehouse and Delivery facility, located at 2395 Palumbo Drive, Lexington, Kentucky. [DE 16-3, DE 16-25 at 2, PageID #259, DE 26 at 1, PageID #327].

Henderson was hired to work in Pieratts Warehouse and delivery facility on or about February 29, 2012. [DE 1-1 at 2-3, PageID #5-6; DE 5 at 2, 4, PageID #32, 34; DE 16-4, 16-5, DE 16-25 at 2, PageID 259, DE 26 at 1, PageID #327]. After several months, Henderson was promoted to "delivery helper." [DE 16-4 at 15-16, DE 16-25 at 2, PageID 259, DE 26 at 1, PageID #327]. Until December 31, 2012, Henderson was compensated on a straight hourly basis. [DE 16-25 at 3, PageID 260; DE 26 at 2, PageID #328]. Around December 2012, Henderson was promoted to the position of delivery crew chief. [DE 16-25 at 3, PageID 260; DE 26 at 2, PageID #328]. Henderson held the position of crew chief at the Palumbo drive warehouse until his resignation on June 26, 2017. [DE 1-1 at 3, PageID #6; DE 5 at 4, PageID #34; DE 16-13; DE 16-25 at 5, PageID #262; DE 26 at 2, PageID #328].

As crew chief, Henderson's duties included the coordination and execution of delivery services for Pieratt's. [DE 1-1 at 3, PageID #6; DE 5 at 4, PageID #34]. In particular, Henderson made customer deliveries, as well as inspecting merchandise at the

Warehouse prior to making deliveries, coordinating deliveries with customers, and driving the delivery truck. [DE 1-1 at 3, PageID #6; DE 5 at 4, PageID #34; DE 16-25 at 2, PageID 259; DE 26 at 2, PageID #328]. When making deliveries, Henderson and a coworker would drive the truck to customer residences throughout Fayette County and surrounding areas to deliver appliances and furniture. [Id]. While Pieratt's does not concede that Henderson "regularly" worked in excess of forty (40) hours per week, it does acknowledges that Henderson "did work more than 40 hours per week on occasion." [DE 1-1 at 4-5, PageID #7-8; DE 5 at 5, PageID #35].

Around the time of his promotion to crew chief in December 2012, Pieratt's implemented a new compensation scheme for delivery personnel which utilized hourly rates, commission payments, and bonus wages, which are reflected in Pieratt's Compensation Program Overview. [[DE 1-1 at 5, PageID 35; DE 16-9; DE 16-25 at 3, PageID 260; DE 26 at 2, PageID #328]. Pieratt's calculates employee earnings within two timeframes: (1) a regular pay period consisting of two workweeks; and (2) a bonus period that measures employee production over a four-week period – i.e., two consecutive regular pay periods.

For a crew chief's regular wages, Pieratt's pays the greater of the employee's calculated hourly wages or calculated commissions. [DE 16-9; DE 16-25 at 3, PageID 260; DE 26 at 2, PageID #328]. Pieratt's calculates a crew chief's hourly wages by

multiplying the employee's hourly rate by the total hours worked in every fourteen (14) day period. [DE 16-9; DE 16-25 at 3, PageID 260; DE 26 at 2, PageID #328].

Each delivery employee is assigned a designated hourly rate and Pieratt's tracks the amount of hours worked by an employee each work week. [Id.]. For example, during the pay period covering January 25, 2016 to February 6, 2016, Henderson was recorded as working a total of 99.37 hours for the entire period: 56:94 for the first week, and 42.43 hours for the second. Henderson's designated hourly rate during this period $13.63 per hour. [DE 1-1 at 5-6, PageID #8-9; DE 5 at 5, PageID #35].

A Pieratt's delivery operations employee's daily commission is made up by combining, among other things, the volume and mileage accrued by an employee. [DE 1-1 at 6, PageID #9; DE 5 at 5, PageID #35]. In particular, Pieratt's calculates commissions according to (a) the total volume of merchandise delivered multiplied by a factor of 0.0095; (b) the total mileage driven multiplied by a factor of 0.12; (c) a predetermined flat rate for exchanges and services pickups based on distance travelled; and (d) any holiday or sick pay calculated at a full day of hourly wages. [DE 16-9, 16-25 at 3, PageID #260, DE 26 at 8, PageID #328]. Pieratt's totals each employee's commission at that end of each two week pay period. [DE 1-1 at 6, PageID #9; DE 5 at 5, PageID #35].

5

Pieratt's compensation scheme also included a "Performance and Safety Bonus" to be paid every two pay periods (every four weeks), consisting of 10% of the employee's total commissions during the four-week period. [DE 1-1 at 7, PageID #10; DE 5 at 6, PageID #36; 16-8, 16-9, 16-25 at 3, PageID 260; DE 26 at 2, PageID #328].

However, in its description of delivery bonuses, Pieratt's states that such compensation "may be reduced by 50% if the associate is required to be paid hourly versus commission. This will be at the sole discretion of the general manager who will take into account both levels of business and performance levels of the other delivery teams." [DE 16-8]. Pieratt's policy also states that such bonuses may be reduced for:

    (a)  Return trips caused by crew errors;

    (b)  Damages to merchandise, customer property, or company
         property;

    (c)  Customer complaints or driving complaints;

    (d)  Failures to conduct proper truck maintenance;

    (e)  Service calls;

    (f)  Safety violations; and

    (g)  Disciplinary action.

[DE 16-8].

With respect to overtime, Pieratt's compensation scheme does not mention calculation or payment of overtime compensation to

employees holding the crew chief position. [DE 16-8; DE 16-9; DE 16-25 at 4, PageID #261; DE 26 at 2, PageID #328]. However, the Pieratt's employee handbooks provide that associates compensated on an hourly basis will be paid time-and-a-half for hours worked over 40 in a week. [DE 16-10; DE 16-11; DE 16-25 at 4, PageID # 261, DE 26 at 2, PageID #328]. Pieratt's Handbook also states that commissioned associates are not compensated with overtime pay. [DE 16-10; DE 16-11; DE 16-25 at 4, PageID #261; DE 26 at 2, PageID # 328].

Pieratt's does not dispute that Henderson was compensated according to these policies from December 31, 2012 until his resignation on June 30, 2017. [DE 16-12; DE 16-13; DE 16-25 at 5, PageID #262; DE 26 at 2, PageID #328]. Nor does Pieratt's dispute that from December 31, 2012 to June 30, 2017 that Henderson's hourly rate was $12.99 and that his hourly rate thereafter increased to $13.63. [DE 14; DE 15; DE 16-25 at 5, PageID# 262; DE 26 at 2, PageID #328].

Henderson complains that "[t]hroughout the entire course of [his] employment, from about March 7, 2012 to about June 26, 2017, [he] did not receive any additional compensation for hours he worked in excess of forty (40) per week, and was routinely subjected to prohibited withholdings of his wages." [DE 1-1 at 9, PageID #12]. Pieratt's does not dispute that Henderson never received overtime pay at one-and-a-half times his regular rate for

any hours worked in excess of 40 per week. [DE 16-25 at 5, PageID #262; DE 26-2, PageID #328]. Henderson resigned on June 26, 2017. [DE 1-1 at 3, PageID #6; DE 5 at 4, PageID #34; DE 16-13; DE 16-25 at 5, PageID #262; DE 26 at 2, PageID #328].

On August 25, 2017, Henderson filed his Complaint [DE 1-1] in Fayette Circuit Court and Pieratt's subsequently removed this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. [DE 1]. Henderson alleges that Pieratt's violated the 29 U.S.C. § 207 of the Fair Labor Standards Act of 1938("FLSA"), 29 U.S.C. §§ 201 *et seq*., as well as KRS 337.060 and 377.285 of the Kentucky Wage and Hour Act ("KWHA"), KRS Chapter 337, by depriving Henderson and other similarly situated employees of wages entitled to them by law. [DE 1-1 at 1-2, 12-14, PageID #4-5, 15-17].

Henderson specifically claims that Pieratt's denied him overtime pay required under 29 U.S.C. 207(a) and KRS 337.285. [DE 1-1 at 2, 13, PageID 5, 16]. Henderson also claims that Pieratt's subjected him to illegal deductions and withholdings of their earned wages in violation of KRS 337.060. [DE 1-1 at 2, 13, PageID #5, 16]. As a result, Henderson seeks his "rightful overtime compensations," and earned unpaid or withheld wages, as well as liquidated damages, prejudgment interest, attorney's fees, costs..." and other unspecified compensation. [DE 1-1 at 13-15, PageID #16-18].

## II. Legal Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

## III. Analysis

### A. Henderson's FLSA Overtime Claim.

The Court must deny the parties respective motions for summary judgment, [DE 14; DE 16] on Henderson's FLSA overtime claim. The Court finds a genuine issue of material fact exists as to whether Pieratt's warehouse and delivery facility where Henderson was employed constitutes a "retail establishment," as defined under

Department of Labor regulations, which would exempt Henderson from the overtime provision of the FLSA. As a result, summary judgment is inappropriate on this issue and the parties' motions are, therefore, denied.

The purpose of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, is to eliminate labor conditions detrimental to the maintenance of a minimum standard of living necessary for health, efficiency, and general well-being of workers without substantially curtailing employment or earning power. *See* 29 U.S.C. § 202. Under the FLSA, employers are required to, among other things, compensate employees an additional measure of wages for work performed after the fortieth hour of the week. 29 U.S.C. § 207(a)(1). Section 207(a)(1) expressly provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id*.

While the overtime provision is compulsory on employers, "...the FLSA exempts many categories of employees from this requirement." *Encino Motorcars, LLC v. Navarro*, 138, S.Ct. 1134,

1138 (2018). The exemptions are to be narrowly construed against employers in order to further Congress's goal of providing broad federal employment protection. *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.,* 204 F.3d 673, 675 (6th Cir. 2000). FLSA exemptions are affirmative defenses, and an employer must prove each element by a preponderance of the evidence. *Thomas v. Speedway SuperAmerica,* LLC, 506 F.3d 496, 501-02 (6th Cir. 2007).

Among those categories of employees exempt from the FLSA overtime requirement are those included in the "retail or service establishment" exemption in 29 U.S.C. § 207(i), which Pieratt's claims here. [DE 14]. The "retail or service establishment" exemption provision provides:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

*Id.*

Thus, an employee is exempt from the right to overtime pay if (1) the employee works at a retail or service establishment, (2) more than half the employee's compensation is commissions, and (3) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate. *Id.*; *McAninch v. Monro Muffler Brake, Inc.*, 799 F. Supp. 2d 807, 810-11 (S.D. Ohio 2011); *see also*, 29 C.F.R. § 779.412.

Pieratt's and Henderson both request this Court grant summary judgment on cause of action under the FLSA. [DE 14, DE 16]. Pieratt's does not dispute that Henderson never received overtime pay at one-and-a-half times his regular rate for any hours worked in excess of 40 per week. [DE 16-25 at 5, PageID #262; DE 26-2, PageID #328]. However, Pieratt's argues, as it did in its Answer [DE 5 at 15, PageID #45], that Henderson was exempt from the payment of overtime waged pursuant to 29 U.S.C. § 207(i), which exempts employees of retail or service establishments from FLSA overtime requirements where the employee is paid primarily on a commission basis and other criteria are met. [DE 14-1 at 4-6, PageID #80-82]. Pieratt's argues that "combined warehouse and Clearance Center Outlet" on Palumbo Drive qualifies as a "retail or service establishment" under the FLSA. [Id.]. For this reason, Pieratt's contends that it is entitled to summary judgment and that Henderson's motion for summary judgment should be denied.

Henderson also moves for summary judgment on this issue, arguing that that the Court should grant summary judgment on his claims that Pieratt's violated the FLSA by failing or to compensate him for any overtime he worked over forty (40) hours. Henderson argues that the warehouse and delivery facility where he was employed is not a "retail or service establishment." [DE 23 at 4, PageID 285]. As a result, Henderson states that Pieratt's is not entitled to an exemption under 29 U.S.C. § 207(i). [DE 16-25 at 5, PageID #262; DE 26-2, PageID #328]. Because Pieratt's does not dispute that Henderson never received overtime pay and he is not exempt, Henderson argues he is entitled to summary judgment and that Pieratt's motion for summary judgment should be denied.

The threshold question for the Court is whether Henderson was an employee of a "retail or service establishment." *Id*. As Henderson correctly notes, the FLSA does not currently provide a statutory definition of "retail or service establishment." See 29 U.S.C. §§ 201 *et seq.* Instead, courts rely on the repealed definition of "retail or service establishment," which continues to be maintained by the Department of Labor in the FLSA's corresponding regulations. *See Jelus v. All Creatures Animal Hosp., Inc.*, 2016 WL 3074406, at 6 (S.D. Ohio 2016); *see also*, *Hamblen v. Ware*, 526 F.2d 476, 478 (6th Cir. 1975) (holding that DOL interpretative regulations "are entitled to considerable weight.")

Pursuant to 29 C.F.R. § 779.24, a retail or service establishment is "[A]n establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." This definition requires a two-pronged analysis. The employer must first be part of an industry with a "retail concept." *Homemakers Home & Health Care Servs. v. Carden*, 538 F.2d 98, 101 (6th Cir. 1976); 29 C.F.R. § 779.316. Next, the employer must establish that at least 75% of its sales of goods or services be: (1) not for resale, and (2) recognized as retail in the particular industry. *Homemakers*, 538 F.2d at 105-06; 29 C.F.R. § 779.321, .322, .330. However, as the Department of Labor has recognized "...As is apparent from the quoted language, not every establishment which engages in retail selling of goods or services will constitute a 'retail or service establishment' within the meaning of the Act." 29 C.F.R. § 779.24.

However, before the Court undertakes that analysis, the Court must first determine the specific "establishment" where Henderson was employed. The Sixth Circuit has held that "an establishment" is a "distinct physical place of business." *McComb v. W.E.* Wright, 168 F.2d 40, 42-43 (6th Cir. 1948). The pertinent DOL regulations, too, define the term "establishment" as used means a distinct physical place of business. 29 C.F.R. § 779.303. The regulation further clarifies:

> ...the term "establishment" is not synonymous
> with the words "business" or "enterprise" when
> those terms are used to describe multiunit
> operations. In such a multiunit operation some
> of the establishments may qualify for
> exemption, others may not. For example, a
> manufacturer may operate a plant for
> production of its goods, a separate warehouse
> for storage and distribution, and several
> stores from which its products are sold. Each
> such physically separate place of business is
> a separate establishment. In the case of chain
> store systems, branch stores, groups of
> independent stores organized to carry on
> business in a manner similar to chain store
> systems, and retail outlets operated by
> manufacturing or distributing concerns, each
> separate place of business ordinarily is a
> separate establishment.

Accordingly, for purposes of the retail or service establishment exemption under 29 U.S.C. § 207(i) each physically separate physical place of business is a separate establishment.

In the instant, it is undisputed that Henderson worked as a crew chief at Pieratt's Palumbo drive warehouse and delivery facility. [DE 1-1 at 3, PageID #6; DE 5 at 4, PageID #34; DE 16-13; DE 16-25 at 5, PageID #262; DE 26 at 2, PageID #328]. It is further undisputed that Pieratt's has two business operations on Palumbo drive in Lexington: the Clearance Center Outlet, located at 2375 Palumbo Drive, and the Warehouse and Delivery facility, located at 2395 Palumbo Drive. [DE 16-3, DE 16-25 at 2, PageID #259, DE 26 at 1, PageID #327].

Pieratt's argues that these business operations constitute one combined "establishment[,]" referring to them as the "combined

warehouse and Clearance Center Outlet." [DE 14-1; 14-2].
Henderson disputes Pieratt's claim, stating that the Warehouse and
Clearance Center are "not only distinct in regards to their
locations but also as to the operations conducted therein." [DE
23 at 10, PageID #291]. However, even if these operations were
both located in the same building, they might constitute the same
or separate establishments for purposes of the exemption. 29 C.F.R.
§ 779.305; *see also*, *Chao v. Double JJ Resort Ranch*, 375 F.3d 393,
398-99 (6th Cir. 2004).

The language of 29 C.F.R. § 779.305 provides the test for
determining whether one business unit with two or more operations
is a retail establishment. The regulation provides that the retail
portion of an establishment would be considered a separate
establishment from the unrelated portion of the business
operations for the purpose of the exemption. The regulation
provides that the retail portion of an establishment is separate
if (a) it is physically separated from the other activities; (b)
it is functionally operated as a separate unit having separate
records, and separate bookkeeping; and (c) there is no interchange
of employees between the units. 29 C.F.R. § 779.305.

However, Pieratt's argues these two facilities are combined,
subject to the only one real estate licenses, have shared record
and book-keeping, and have interchange between of employees
between the two units. [DE 14-2; DE 26 at 6, PageID #332]. On the

16

other hand, Henderson contends that the warehouse and delivery facility are physically distinct from one another because they have different physical addresses, different telephone numbers, different entrances, and are advertised as discrete locations. [DE 23, DE 16-3]. Henderson further argues that Pieratt's warehouse is not engaged in the sale of any retail goods, that warehouse employees do not engage in retail sales at the Clearance Center, and the Clearance Center only employs a single sales associate who does not perform work at the warehouse and delivery facility. [DE 23, 16-4, 16-12].

Here, genuine issues of material fact exist as to whether the Clearance Outlet and Warehouse are physically separate, functionally separate, and whether there is an interchange of employees for the purposes of determining whether Henderson's place of employment was a "retail establishment" under the regulations. In this instance the Court must deny both Pieratt's and Henderson's respective motions for summary judgment.

**B.   Henderson's Claims Under the Kentucky Wage and Hour Act**

Henderson also moves for summary judgment on his two causes of action under the Kentucky Wage and Hour Act. [DE 16 at 19-21, PageID #133-35]. First, Henderson argues that Pieratt's violated the KWHA's overtime provision, KRS 337.285, by unlawfully failing to compensate him for overtime hours. Second, Henderson argues that Pieratt's violated the KWHA by withholding wages unlawfully

through deductions prohibition under KRS 337.060. Henderson's motion must be denied as to these issues for the reasons set forth below.

**1. Henderson's KWHA Overtime Claim.**

The KWHA provides a state law analogue to the FLSA's overtime provision. *See* KRS 337.285(1). Like the FLSA, the KWHA also makes its overtime provisions mandatory for employers. *See McCartt v. Kellogg USA, Inc.*, 139 F. Supp.3d 843, 857 (E.D. Ky. 2015) (citing KRS 337.285). This Court has held that "the overtime provisions of the FLSA and Kentucky wage and hour laws are analogues and analyzed in the same manner." *Clark v. Teamsters Local Union* 651, 349 F. Supp. 3d 605, 619 (E.D. Ky. 2018) (internal citation omitted). The KWHA overtime statute expressly provides:

> No employer shall employ any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forty (40) hours in a work week at a rate of not less than one and one-half (1-1/2) times the hourly wage rate at which he is employed.

*Id.*

The KWHA imposes liability when an employer "pays any employee less than wages and overtime compensation to which such employee is entitled[.]" *Grossl v. Scott Co. Fiscal Court*, 556 S.W.3d 221, 224 (Ky. App. 2018) (quoting KRS 337.385(1)). KRS 377.285(1) is enforced through KRS 337.385, which provides:

> Any employer who pays any employee less than
> wages and overtime compensation to which such
> employee is entitled under or by virtue of KRS
> 337.020 to 337.285 shall be liable to such
> employee affected for the full amount of such
> wages and overtime compensation, less any
> amount actually paid to such employee by the
> employer, for an additional equal amount as
> liquidated damages, and for costs and such
> reasonable attorney's fees as may be allowed
> by the court.

KRS 337.385(1).

As discussed above, it is undisputed that Henderson worked in excess of 40 hours per week on occasion without overtime pay. [DE 16-25 at 5, PageID #262; DE 26-2, PageID #328]. As a result, Henderson argues summary judgment is appropriate under KRS 337.285. [DE 16-1].

However, like the FLSA, the KWHA's overtime statute also includes certain exemptions. *See* KRS 337.285(2). The language of KRS 337.285(2) provides that the overtime pay requirement "...shall not apply to...(a) Employees of retail stores engaged in work connected with selling, purchasing, and distributing merchandise, wares, goods, articles, or commodities..."

Pieratt's relies on the "retail store" exemption language of KRS 337.285(2)(a), arguing that Henderson was employed at a "retail store[,] and therefore is exempt from the KWHA's overtime pay requirements. [DE 26 at 5-7, PageID #331-333]. Henderson contends that he was employed at a warehouse and delivery facility – not a retail store. As discussed above, there is a genuine dispute of

material fact as to whether the warehouse and delivery facility constitutes a "retail establishment" under the FLSA. We find the same dispute exists here as to whether the warehouse and delivery facility constitutes a "retail store" for purposes of KRS 337.285(2)(a). Accordingly, Henderson's motion for summary judgment is denied on this issue.

### 2. Henderson's KWHA Withholding Claim

Henderson further requests the Court to grant him summary judgment on his KWHA claim that Pieratt's unlawfully withheld wages from him in violation of KRS 337.060. [DE 16-1 at 19-21, PageID #133-35]. Henderson argues because Pieratt's compensation scheme, specifically its "Performance and Safety Bonus" compensation, may be reduced for, among other things, damage to merchandise, the compensation scheme violates the express language KRS 337.060(2). [DE 16-1 at 21, PageID #135]. Pieratt's response [DE 26] to Henderson's motion [DE 16] does not respond to Henderson's argument. [DE 26 at 5-7, PageID #331-333].

The language of KRS 337.060 provides, in relevant part: no employer shall withhold from any employee any part of the wage agreed upon. KRS 337.060(1). The language of KRS 337.060 further states "...no employer shall deduct the following from the wages of employees:

(a) Fines;

(b) Cash shortages in a common money till, cash box or register used by two (2) or more persons;

(c) Breakage;

(d) Losses due to acceptance by an employee of checks which are subsequently dishonored if such employee is given discretion to accept or reject any check; or

(e) Losses due to defective or faulty workmanship, lost or stolen property, damage to property, default of customer credit, or nonpayment for goods or services received by the customer if such losses are not attributable to employee's willful or intentional disregard of employer's interest."

KRS 377.060(2).

For the purposes of the KWHA's withholding prohibition in KRS 337.060(1), the term "wage" is defined as follows:

...any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, **earned bonuses**, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy...

KRS 337.010(1)(c)(1) (emphasis added).

Henderson argues that Pieratt's compensation scheme – specifically its "Performance and Safety Bonus" policy – violates KRS 377.060(2). [DE 16-1 at 20-22, PageID #133-135]. As noted above, Pieratt's compensation scheme included a "Performance and Safety Bonus" to be paid every two pay periods (every four weeks),

21

consisting of 10% of the employee's total commissions during the four-week period. [DE 16-8, 16-9, 16-25 at 3, PageID 260; DE 26 at 2, PageID #328]. However, in its description of delivery bonuses, Pieratt's expressly states that such compensation "may be reduced by 50% if the associate is required to be paid hourly versus commission. This will be at the sole discretion of the general manager who will take into account both levels of business and performance levels of the other delivery teams." [DE 16-8]. However, it is undisputed that Pieratt's policy states that such bonuses may be reduced for:

      (a)   Return trips caused by crew errors;

      (b)   Damages to merchandise, customer property, or company property;

      (c)   Customer complaints or driving complaints;

      (d)   Failures to conduct proper truck maintenance;

      (e)   Service calls;

      (f)   Safety violations; and

      (g)   Disciplinary action.

[DE 16-8].

Here, Pieratt's policy sanctions the reduction of earned bonuses, for reasons including "damage to merchandise." [Id.] Henderson is correct that KRS 337.060(2) prohibits employers from deducting wages, including earned bonuses, for, among other

things, breakage or damage to property. *See also*, KRS
377.010(1)(c)(1) (defining wages as including "earned bonuses").

However, Henderson has made no showing that any of his wages
were actually deducted for prohibited reasons in accordance with
Pieratt's policy. [DE 16-1 at 19-22, PageID# 133-35]. Henderson
merely states that he is entitled to judgment for "all unlawful
deductions made from his wages." [DE 16-1 at 21, PageID# 135].
Henderson's blanket assertion that deductions were made – without
proffering evidence of such deductions – is insufficient to meet
his burden at the summary judgment stage. *See Anderson*, 477 U.S.
at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*,
822 F.3d 831, 835 (6th Cir. 2016). As such, there is a genuine
dispute of material fact as to whether Pieratt's did, in fact,
make unlawful deductions from his wages. Accordingly, and despite
Pieratt's failure to respond, the Court cannot grant Henderson
summary judgment on this issue.

### IV. CONCLUSION

Because genuine issues of material fact exist remain the Court
must deny the parties' respective motions for summary judgment.
Accordingly, and for the foregoing reasons, **IT IS ORDERED** as
follows:

(1) That Defendant Pieratt's Inc.'s motion for partial
summary judgment [DE 14], be, and the same hereby is, **DENIED**; and

(2) That Plaintiff Henderson's motion for partial summary judgment [DE 16] be, and the same hereby is, **DENIED.**

This the 29th day of April, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge